Keith B. SALRIN, Defendant-Appellant,

v.

STATE of Indiana, Plaintiff-Appellee.

No. 3–880A255.

Court of Appeals of Indiana, Third District.

May 13, 1981.

Daniel S. Tankersley, Winamac, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Frank A. Baldwin, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Keith B. Salrin appeals his convictions by a jury of reckless homicide and driving while intoxicated. Salrin presents four issues for review:

1. Whether there is sufficient evidence to support the charge of reckless homicide.

2. Whether voluntary intoxication is a defense to the offense of reckless homicide.

3. Whether the statutory definition of "recklessly," contained in IC 35–41–2–2(c) is so vague and ambiguous as to violate due process.

4. Whether the failure of the trial court to state in its order overruling Salrin's motion to correct errors that it had reviewed the evidence is grounds for reversal.

## I.

Salrin initially argues there is insufficient evidence to sustain the conviction of reckless homicide under IC 35–42–1–5.[1] As we have often stated, in reviewing the sufficiency of the evidence to support a conviction, we may not judge credibility or weigh evidence. Rather, we may consider only that evidence most favorable to the state, together with all logical and reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value supporting the judgment, the conviction will not be set aside. *Perry v. State* (1980), Ind.App., 401 N.E.2d 705; *George v. State* (1979), Ind.App., 397 N.E.2d 1027.

The evidence most favorable to the state reveals Salrin was driving west on State Road 14 at 10:00 p. m. on October 4, 1978. The state's witness, who was driving behind Salrin's car, observed Salrin drift slowly toward the center of the road, nearly strike an eastbound car, subsequently cross the center line, and then veer sharply back into the westbound lane. Salrin then drove straight for approximately one half mile when he again began to drift across the center line, driving down the middle of the road. The witness testified he then saw the lights of an oncoming eastbound vehicle. At this point, Salrin veered back into his lane, apparently trying to avoid an accident, causing his car to go into a slide. Salrin's back wheels slid off the pavement and his car shot across the road, hitting the oncoming truck. The driver of the truck died as a result of the accident. A blood-alcohol test revealed Salrin's blood-alcohol content to be approximately .36%.

■ Driving while intoxicated in conjunction with repeated crossings of the median is sufficient to sustain a conviction of reckless homicide. *Broderick v. State*

(1967), 249 Ind. 476, 231 N.E.2d 526. However, evidence of intoxication coupled with a single incident of crossing the center line is not sufficient to sustain a charge of reckless homicide. *DeVaney v. State* (1972), 259 Ind. 483, 288 N.E.2d 732.

■ Salrin contends the facts in his case are more closely related to those in *DeVaney* than in *Broderick.* We decline Salrin's invitation to re-evaluate and reweigh the testimony in comparing the factual circumstances in the instant case with those of previously decided cases. The jury was instructed as to the definition of recklessness, and found against Salrin. Salrin was in an extremely intoxicated condition and was seen crossing the median on more than one occasion. We cannot conclude that, as a matter of law, the evidence was insufficient to form a basis upon which the jury could base a guilty finding. The question is not that Salrin might have been convicted of causing a death while intoxicated under the provisions of a different statute. *See* IC 9–4–1–54. The question is whether the evidence sustained a conviction for the offense charged. It did.

## II.

Salrin next argues that he was too intoxicated to form the intent necessary for reckless conduct.[2]

The jury was instructed on the potential effect of intoxication in proof of the charges. Both Salrin and the state tendered instructions on the subject and no objections have been raised either to instructions given or refused. Thus, Salrin's argument on appeal arises only in the context of whether the evidence was sufficient for the jury to have concluded his conduct was reckless. We are therefore constrained

---

1. IC 35–42–1–5 provides:

   "Reckless homicide.—A person who recklessly kills another human being commits reckless homicide, a class C felony. However, if the killing results from the operation of a vehicle, the offense is a class D felony. [IC 35–42–1–5, as added by Acts 1976, P.L. 148, § 2, p. 718; 1977, P.L. 340, § 29, p. 1533.] (The 1980 amendment deleted the last sentence of this section.)

2. IC 35–41–2–2(c) states,

   "A person engages in conduct 'recklessly' if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct."

by the rules of appellate procedure in determining sufficiency questions.

■ At the threshold it must be noted that reckless homicide is not a "specific intent" offense, nor is it an offense wherein knowledge of an attendant circumstance is a material element of the offense. *See Carter v. State* (1980), Ind.App., 408 N.E.2d 790. It is, instead, a general intent crime which involves choosing a course of action either with knowledge of the serious danger to others involved therein, or with knowledge of facts which would disclose the danger to any reasonable man. *Beeman v. State* (1953), 232 Ind. 683, 115 N.E.2d 919, 922.

■ While Salrin cites us to expert testimony concerning intoxication, that opinion evidence was not conclusive upon the trier of fact. The jury heard the evidence of what Salrin, in fact, did. From it they could reasonably have inferred he engaged in reckless conduct causing the death of another human being.

### III.

Salrin next urges the definition of "recklessly," as found in IC 35–41–2–2(c), is so vague and ambiguous as to be in violation of fifth and fourteenth amendment constitutional guarantees of due process.

■ Salrin first asserted this constitutional challenge in his motion to correct errors. That was too late. The law is clear that to properly challenge the constitutionality of a statute defining the crime charged, such a challenge must be made by written motion to dismiss filed prior to the arraignment and plea. IC 35–3.1–1–6(a)(3); IC 35–3.1–1–4(b); *Smith v. State* (1980), Ind.App., 403 N.E.2d 869; *Johnson v. State* (1977), Ind.App., 367 N.E.2d 25. No such motion was ever filed nor was any objection made to the instructions which referred to and informed the jury regarding the statutory definition of "recklessly." We therefore conclude Salrin has failed to preserve any error relating to the constitutionality of the statute.

### .IV.

Salrin finally contends the trial judge failed to review the evidence in ruling on the issue of sufficiency of evidence in his motion to correct errors. Salrin premises this contention upon the court's failure to state in its order that it had reviewed the evidence. The order reads:

"Comes now the Court and the defendant having filed his Motion to Correct Errors, the Court now without argument now overrules said Motion.

Copies of this memorandum are mailed to counsel of record.

Done this 4th day of June, 1980."

■ The trial court is under a duty to examine the evidence when reviewing a motion to correct errors to assure there is sufficient evidence upon which the jury could find a defendant guilty beyond a reasonable doubt. *Moore v. State* (1980), Ind., 403 N.E.2d 335. However, Salrin does not cite precedent, nor can we find any, requiring the court to set forth in its order overruling a motion to correct errors that it has properly reviewed the record. In the absence of evidence to the contrary, we presume the trial court properly carried out its duties in ruling on the motion.

No error having been found, this cause is affirmed.

Affirmed.

HOFFMAN, P. J. and STATON, J. concur.